GARRISON, Judge,
concurring in part and dissenting in part.
I agree with the majority opinion that the trial judge properly rejected the plea of judicial estoppel.
I do not agree with that opinion’s conclusion that the City presented evidence sufficient to support a judgment in its favor in a possessory action.
To quote from the majority opinion, “ . . . the possessor without title is entitled to be maintained in possession only to the extent of the boundaries within which he proved actual, physical and corporeal possession, and he enjoys no constructive possession beyond the limits of his actual possession.”
The City contends, and the majority of this panel agrees, that the boundary requirement is satisfied because the entire 357-foot-wide by 7,206-foot-long area is circumscribed by four major traffic arteries, with concomitant curbing, which the City constructed, paved, and maintained. The contested 40-foot strip lies entirely within, and is totally indistinguishable from the rest of the land encompassed by these “boundaries.”
If the construction and maintenance of streets by a city may be regarded as the establishment of “boundaries,” and retrospectively claimed as acts intended to demonstrate municipal ownership, then there are many remaining acres within the urban area which now are vulnerable to future pronouncements by the City that it possesses them also. This would be all the more the case if the City had happened to trim trees along the edge of the land or had happened, perhaps because particular lots adjoined public property or perhaps merely in the performance of its customary maintenance chores, to cut the grass on privately owned acreage.
A city has a right — indeed, a duty — under the law to protect the health and safety of its citizens through its police power. One extension of this power is its right to pass ordinances permitting it to cut and remove weeds and grass when the owner fails, ne-gleets, or refuses to do so, and to construct streets and roads for public use. It seems clear that the City’s acts in this case were simply pursuant to its police power. The City, however, would have them construed as possessory acts — and the other members of this panel have so construed them.
The majority opinion seems to imply that a landowner must actually complain if the City cuts his grass or builds streets or sidewalks across his land, lest he find the City government claiming squatter’s rights in a possessory action. Here, the City cut the grass (it cut everyone’s grass across the entire sector), constructed cross streets and pedestrian crosswalks, and installed sewerage lines for a period of many years. These •acts were not the result of a spontaneous burst of benevolence from the City government nor were they intended as acts of ownership by the City. Rather they were simply by-products of essentially routine urban maintenance. To the majority, however, they constitute significant acts of legal possession.
It must be admitted that such acts, when exercised by a private party, can constitute acts showing intent to possess as owner. I believe, however, that there is a fundamental distinction between the acts of a private owner vis-a-vis another’s property and the acts of a municipality vis-a-vis the property of citizens. To hold that a city, by performing municipal functions in exercise of its police power, may acquire possession of the property of a private citizen (that is, because the City, purely in the course of performing its required duty, has “possessed as owner”) amounts to a denial of due process of law.
Moreover, such a holding permits a gratuitous acquisition of unauthorized power by government as against the correspondingly decreased power of individuals. It is generally recognized that government agencies— whether at the municipal, state or federal level — abhor vacuums and, however unconsciously or subtly, are inclined steadily to increase whatever authority they possess. To paraphrase a contemporary aphorism, bureaucratic authority expands to acquire whatever power is not denied it. In that *1001 regard, the majority opinion creates a dangerous precedent with regard to the unauthorized, and in my opinion legally unsupportable, extension of municipal power.
Even if I were to concede that the City’s activities could, of themselves, constitute possession as owner, the City has failed to prove another important part of its case. The City has not possessed the claimed area “within enclosures.” It is undisputed that there are no markers of any kind separating the 40-foot area from the 300-foot area on one side nor from the 17-foot area on the other. Furthermore, it is clear from the City’s petition and briefs on appeal that it lays no claim — as to any intent to possess as owner — to the 300-foot-wide area. Yet it is apparent that the grass in the 300-foot-wide area was mowed by the City as systematically as that considerably narrower area it claims, apparently in retrospection, to possess by virtue of such mowing.
An essential element of possession as owner is that the possession be adverse. It is obvious from the City’s own admissions that to the extent it “possessed” the 300-foot area, it possessed on behalf of the State Department of Highways and not adversely to the State. On the other hand, it claims that it did adversely possess the 40-foot area. There were no “external and public signs” that the City intended so to possess only the 40-foot strip. The City’s acts were exercised over the entire 357-foot by 7,206-foot area with nothing to give public notice of the character and extent of its possession. Public notice of the extent of one’s adverse possession is an essential component of legal possession. There were no relevant nor meaningful enclosures regarding the 40-foot strip to fix definitely the limits of the City’s alleged possession. Therefore, the City’s claim should fall.
Finally, I must dispute the majority’s characterization of the area as a “neutral ground.” No evidence was presented in the trial court to show that it was a neutral ground as opposed to being merely an open tract of land, thoroughly undesignated as to any public character. The fact that the land in question happens to be undeveloped and lies between two major thoroughfares does not in any way destine it to be a neutral ground. The fact that many citizens may have come to regard the land as a “neutral ground” is a remote and subjective standard that does not cause such to be the ease. If, indeed, this tract is a neutral ground then — with its 357-foot width — it certainly must be one of the widest in the world.
Arbitrarily classifying so large a stretch of land as a neutral ground — quite apparently on the sole, essentially capricious basis that it is now to the municipal government’s tactical advantage to do so in this possessory action — implies that the only possible use of the area is to divide Pontchartrain Boulevard and West End Boulevard into lanes according to the direction of travel on each, and that it has and that it can have no other possible legitimate purpose. Such a gratuitous and unsupported designation merely permits the essentially mechanical and routine acts of municipal departments to appear, on the surface at least, as “evidence” of the City’s intention to possess the 40-foot strip as owner when, in fact, there have been simply no substantial acts of possession by the City — particularly any acts to possess it as owner.
To hold that the City’s actions in this case constitute legal possession of the contested strip of land places an unfair burden on private property owners in relation to the potent police powers of municipalities. I would reverse the judgment of the trial court. Accordingly, I respectfully dissent.